All right, next case we'll hear this morning is Herrington versus Dotson. Mr. Ballinger. Thank you, Your Honor. May it please the court. I'm the director of the Appellate Litigation Clinic at the University of Virginia School of Law. And it's my pleasure to introduce Ms. Madeline Killian and Mr. Nikolai Morse, who will be presenting argument for Mr. Herrington today. All right, thank you very much. And we'll hear from Ms. Killian first, I guess, right? That's right. Good morning, Your Honors, and may it please the court. Since briefing, this case has been distilled down into two main issues. First, and most importantly, the validity of Mr. Herrington's waiver of his right to counsel in his 2012 criminal trial. And second, the proper remedy for the 2009 failure to file charge, of which the Commonwealth has conceded he's innocent. The ineffective assistance of counsel issue raised in the brief was relevant to solving any appellate forfeiture problems. But because this court has held that the Slayton rule won't apply to the waiver issue, and because the Commonwealth has conceded that his appeals counsel was ineffective for failing to raise the 2009 tax charges. Are you saying that that's what we held in the prior opinion? Yes, that's right. I thought it just said that it was debatable. This court held that it was not an adequate opinion. We sent it back. Mm-hmm. Yes, that's right. This court held that it wasn't an adequate and independent remedy under Virginia law, and that it wasn't clear that Virginia used the Slayton rule to apply to jurisdictional defects like the waiver of the. So it didn't mean that it wasn't applicable as a matter of law. You just, the court couldn't tell from the record it had before. Right, right. Hm. But today we're focusing the majority of our argument on the merits of the waiver issue. Mr. Harrington's waiver was invalid for three reasons. It was not voluntary, not unequivocal, and not knowing. Each of these are fatal flaws. So if the court sides with us on any one of these issues, then Mr. Harrington is entitled to a new trial on all of his charges. And the issue of the remedy for the 2009 tax charge fades away. We think that the voluntariness pronged. Well, the state points to several portions of the transcript where an appellant says he wants to represent himself. At some point, the court below had to take him at his word that he wanted to represent himself, didn't it? No, we disagree. We think that those portions of the transcript just can't be separated from the earlier dialogues that he had with the trial court judge in which he explained. No, there was a lot of discussion early on. He jumped around on his reasons. But ultimately, the court concluded that he wanted to represent himself. He excluded certain other possibilities. But then as they had later hearings and presentations in court, every single time, every single time, the judge asked as a first question whether he was waiving his right to counsel and confirming that. He said, yes, I do waive. And those were unequivocal, and there wasn't further discussion. So the real question is, at what point? What is it supposed to do? The man appears there and says, I want to represent myself. There's no discussion like the earlier discussions. I think at least three times, he says, yes, I'm waiving. I'm representing myself. How do we handle that? Yeah, we don't dispute that at a certain point in the proceedings, he did become consistent in his decision to represent himself. But we don't think that that later consistency can be separated from those early discussions that he had with the trial judge, where he explained that he had this self-incrimination dilemma, and he was offered no solutions. As a whole, he appears to just be resigned to, I'm just going to have to represent myself, when presented with two options, either represent yourself or get a lawyer. Right. And we think that that choice that he was put to was constitutionally impermissible. Based on what this is. He made it. The court gave three choices. And he rejected seeking a court-appointed counsel, because he didn't want to fill out the affidavit. That's right, because he had to. And he was categorical about that. And maybe for some good reason, because there's a lot of indications of things he's, how much money he had and didn't have over the years. You know, he'd bought this house for $650,000, and reported he was making $17,000 a month, and bought a $52,000 truck, and had large amounts, three balances in bank accounts. And I don't know whether those were fantastical or not, but there was a lot of confusion about his assets. And he talked about, well, I'm going to try to round up the money and hire a lawyer. But he had the right to hire a lawyer, have one appointed, or to represent himself. Those were the three choices. And he said the second one, I'm not going to seek appointment. Pretty clearly, I thought, many times. And so then it's whether he hires a lawyer or represents himself. But finally, he says, well, I'm going to represent himself. He's also worried about speedy trial, and I don't want to delay the court proceeding, and I want to represent myself, which is sort of lame, I think, too. But after the discussion, they worked through it. He finally comes and says, I want to represent myself. The court's trying to find what he wants. But it was clearly voluntary, their discussion. Right. But prior to that, he had explained to the trial judge twice that the reason why he was reluctant to fill out those appointment of counsel forms was because the charges he was facing in this trial stemmed directly from the same forms in a prior trial in 2008. So it wasn't genuinely voluntary, and it wasn't a real choice. I had some difficulty matching your argument with the record. Is your argument that he was concerned that if he filled out a form now, it would be used in his pending case or a future case? It was that it would be used in this pending case. And what's your basis in the record for that? Because I've looked at this several times, and that's how the trial court took it. So on the December 20, 2011 hearing, Mr. Harrington's talking about all these perjuries from the public defender. I'm scared to fill out the form, because she's going to give me a perjury charge, which is certainly forward-looking. And I think at the February 21, 2012, the court's again having this discussion with Mr. Harrington about filling out the form. You have an attorney appointed to represent you. You haven't asked for that. He says, I'm not going to meet the standard and say anything about perjury, present or future. And then on the 21st of February, the court's going back through that with him again. We could appoint counsel if you wanted, but you did not want that. No. Court asked him to clarify. No. So if indeed, like some of the tax cases you cited, there was an expression that if I fill out this form, it'll be used against me now in these charges, then you've got a Fifth and Sixth Amendment conflict. But unless you can point me to something else in the record, it looks like to me his concern was that I'll be charged with more charges in the future for what I'm going to fill out now. And the court explained to him, well, just be honest about it, and you're not going to have to worry about that. Well, yeah. So in December 2011, he did use language that indicated that he was worried about future charges, but I think he had joint concerns here. He was worried that the prosecutor would add additional charges. Well, I know you say that now, but what I'm asking for is, where in the record does he say that? In the record, he doesn't use the word self-incrimination, but he tells the judge that his current perjury charges are absolutely why he's reluctant to fill out the forms in this case. Where? That's on page 255 of the Joint Appendix that he... And that was the exchange where the trial judge told him that if he was unwilling to fill out these affidavits, that his only two options were to hire his own attorney and represent himself. But at that point, he had expressed to the trial judge numerous times that he was struggling to get together the money. That's what you quoted for me was the closest it comes for him, but still that doesn't refer to anything clearly in the present. The trial court asked him, are you concerned about your perjury charges because of these prior applications? He says, yes, they are. That's why you don't want to fill one out now. Yes, but he never says, because they're going to use it against me. And in the context of all the other responses, those were all future-oriented. He made two comments that he was concerned about his perjury charges. We think that the December 2011 one was somewhat more future-oriented, but the February 2012 one can reasonably be understood as concern about the charges that he's presently facing. And at that point, he gave the trial judge everything that she needed to understand that he was in this dilemma. He made clear that he was reluctant to fill out  And he said, I'm not going to do that. I'm not stemming directly from those forms in a prior case. I don't know how much more. He says, I want to represent myself on repeated occasions. What's she supposed to do? Well, this court in Davis indicated that when a tax evasion defendant has raised self-incrimination concerns about filling out forms for appointment of counsel, that Fifth and Sixth Amendment concerns are intertwined if the trial judge doesn't take affirmative steps to make accommodations. And that case and other cases clearly go to the pending proceeding, not to some future prosecution. I mean, we think that it's entirely reasonable here that he was concerned about the pending proceeding as well as future proceedings. He felt that filling out those forms would give that prosecutor more information about his finances that would be used against him at the trial that he was currently in. So we think that his case fits perfectly within that line of jurisprudence. Can I ask you, before your time is up, with respect to the conviction for failure to file, what remedy do you want? We want vacator of that charge, because we agree with the Commonwealth that he's legally and factually innocent of it. And we know that the common. And his attorney was ineffective. And his attorney was ineffective, yes. And you just want us to vacate the conviction, or do you want us to vacate the attorney who was only on appellate level? And so the question is, he was already convicted. So we would have to vacate the Court of Appeals decision, right? That's right, but we disagree with the Commonwealth about his preservation of an objection at the trial level. Stick with me on the procedure here. So Grant Habeas, and you say we would have to vacate the Court of Appeals decision, is that right? Yes. And then give him what, a delayed appeal? We disagree as to whether he should be offered a delayed appeal. So we'll be vacating the Virginia Court of Appeals opinion? We want vacator of the conviction. Well, you can't go to the conviction because the ineffective assistance of counsel was only on appeal. Yes, but these are extraordinary circumstances where the Commonwealth has said that their evidence affirmatively shows at trial that he was innocent of this crime. And then why shouldn't Virginia do the vacating and not us? We think that it's within this court's discretion to remand the case back to Virginia. But we think in these extraordinary circumstances when we start going to the Senate. Then what happens to the Senate? That, I think, would be left to the Virginia Department of Corrections to calculate. We know that it was a one-year charge, but he has some time. But how would they do that? There's a final judgment there. And we're just vacating. You're saying we should vacate the conviction in the trial court. He didn't have an attorney in the trial court, did he? No. So ineffective assistance of counsel wouldn't apply to the trial court's determination. Right, the ineffective assistance of counsel wouldn't. But the Commonwealth has conceded that their own evidence was constitutionally insufficient to show that he was guilty of the crime. I don't think anybody argues about that. The question is, Judge Niemeyer, and I think the whole panel has it, is what are we supposed to do? Because we're a federal court, and it is a federal court conviction. The Commonwealth's position, as I understand it, is that we grant habeas relief and send it back to the Virginia courts, essentially having found he was actually innocent of the one charge. But you want us to eliminate the middleman. Yes. I mean, he has a fully exhausted habeas petition. It's eight years in the making, and we just don't see what end of justice would be served by sending it back to Virginia. How much time has he got left? Not exactly. No, he has four and a half years, I think. Three years. 27, does he get out? He's also serving concurrently for another criminal trial, so it's not clear exactly how much is left on this sentence. But I see that my time has expired, but for all of these reasons. Well, I'd just like to explore this. You know, it's very ambivalent what you're telling us. And if we're going to interfere in a state proceeding because of a violation of a federal law, we have to have a basis for it, and we have to be focused on it. And it seems to me that if the ineffective assistance of counsel, and that's the whole basis for that particular claim, right? Yes. OK, so it's a Strickland issue, and that relates only to the appellate judgment. So we follow through and we vacate the appellate judgment and give him, there's something called a delayed appeal in Virginia, isn't there? Give him a delayed appeal and let new counsel take that judgment and present it to the Virginia Supreme Court, and let them decide what the consequence is. I mean, the court could say it's immaterial. He's 14 counts or whatever he had, it's one count, and vacate it and not sentence. The court could say we have to re-sentence and send it back because it makes a difference. And we're not going to apply federal standards to all that, are we? No, and if this court thinks that it's the best. In other words, what's the consequence that you think, if you win on that point, what's the consequence in this case? That his sentence would be reduced and that. Why, they had concurrent sentences, didn't they? 14 of them? Yes, but it would be shortened. Isn't that a Virginia law decision, though, to be made? How can we as a federal court say that we're going to reform the state court decision and enter our own federal sentencing decision for a state crime under state standards? If this court isn't convinced that there's a way to vacate the charge by a federal habeas, then we would, of course, welcome a new appeal. But we just feel that it's unnecessary, given that he's exhausted every possible option. If we vacate, you want us to vacate the trial court, even though there was no ineffective assistance of counsel at trial court, right? Right, because he proposed. What's the basis for us to vacate a trial court decision? That the Commonwealth's evidence was insufficient, and they've largely abandoned the issue. Because he was actually innocent. Yes. All right, so now, and you say that, and he wants that vacated. So what do you argue is that makes a difference? Keeping in mind under Virginia law, there is a direct writ, at least there used to be, the Virginia Court of Appeals for actual innocence. And again, we would welcome and direct a new state appeal, if that's the only thing that this court is willing to grant him. But we are just not entirely convinced that it's necessary when he's exhausted all of his possible avenues to appeal this charge that he's actually innocent of, and that nobody seemed to notice for over a decade. But I see that I'm well over my time, so. All right, why don't we hear from Mr. Moore. Are you next, Mr. Moore? Mr. Stallard. Oh, excuse me. Mr. Stallard comes next. I'm sorry. I can't count one, two, three. Good morning. May it please the court. Craig Stallard on behalf of the director in this case. To start with the last argument first, the director believes the correct remedy in this case is to remand to the district court, grant the habeas as to ineffective assistance of counsel in respect to the failure to file the tax return of 2009, grant the petitioner a delayed appeal to the Court of Appeals. If you were to do that, I anticipate that you would. Grant, and what was the last part you said? Grant the petitioner a what? A delayed appeal to the Court of Appeals of Virginia. Can you do that? We would be granting a petition to the Virginia Court of Appeals? Yeah, how do we do that? Because the claim is counsel's ineffective on appeal. It's conceded that counsel would. We already granted that, Rick. You just said we should remand with instruction to grant. Well, this court can do it, or it can remand to the district court. Right, why don't we just, OK, go ahead. That part, I think it's fine. Either way the court wants to do it, it's fine. But I think the remedy is a delayed appeal to the Court of Appeals of Virginia. And if they were to file that. Is there a precedent for that? Within the Commonwealth of Virginia, whenever there's an issue with respect to an appellate issue, the remedy is a delayed appeal, granted through habeas. Even though they already had an appeal? Even though, well, that's the issue. The argument is the appeal that was made by counsel was not proper, because there was a shortage. No, so that gets to my question that I put to your colleague here, was if that was the corrupted procedure, then we should vacate the appellate decision, Court of Appeals decision, and let there be a reappeal. And if the Court of Appeals would use the procedure then to vacate it, and either send it back for new sentencing, or impose a sentence, or I think it's concurrent sentence in this case. It is, but it still would be a conviction that would not be on his record. Oh, I understand that. We don't want to leave a conviction if it's actual innocence. But the question is, there's a procedure to follow. Correct. And I think to be clear, the delayed appeal would be as to this particular charge, not to delayed appeal to all charges. Just this particular one, because this is the one charge that it does appear the evidence affirmatively established he was not guilty of. So the fact that Virginia Court of Appeals would have a do-over on this one charge. That's correct. And I can tell the court, since it would likely be my case on appeal, if they were to file such a pleading, I would be confessing error, and say that he is right. Now, that is not binding in the Court of Appeals, but they obviously would give weight to the Commonwealth indicating that this is a charge that should go away. They've asserted they were concerned I may raise Slayton, or something like that on direct appeal, which does not apply to direct appeal situations. That is not something I could or would even want to do. Obviously, this was a conviction that should not have occurred. The appeal where the pro se supplement had over 120 assignments of error, 40 pages. There was a lot there for the court and counsel to try to go through. But any decision on whether Mr. Harrington's sentence would change is a Virginia Court decision, not our decision. Right, and if the conviction obviously vacated or ultimately found to be reversed on appeal, the delayed appeal, the sentence that went with that would be vacated as well as part of the conviction. And that would be part of the order that we would do. You know, in our court, that becomes an issue sometimes. Because when you vacate a particular conviction, it could change the way the court sentenced or looks at a sentence. And that would be a determination to be made by Virginia under its principles. Correct. And I've had behaviors that the federal court has ordered resentencing where certain things happen that would affect the sentence. Or the court could do it. Maybe there's authority for courts doing it itself. Correct. And like I said, I think the best, cleanest, simplest way to deal with this is to allow the petitioner to refile a petition for appeal in the Court of Appeals alleging error as to this conviction and let the Court of Appeals deal with it. And as I said, the common law is not intending to stand in the way of such reversal. But I think that is the cleanest mechanism to get where the defendant should be. And then just to go back, as the court's indicated, I think regarding his waiver of counsel, I think the record is clear. He was consistent in the fact that he would Where in the record, looking at all of it, is he clear and unequivocal that he wants to waive his right to counsel when he repeatedly says he is concerned about the perjury charges and filling out that form, and he doesn't really want to represent himself, particularly at the beginning? Where is it clear and unequivocal that he wants to waive his right to counsel versus he's just throwing up his hands and saying, OK, I give up. If those are my two choices, and in the end he does only have two choices, hire an attorney or go to trial representing himself, and that's at JA 255. So where is the clear and unequivocalness in that? Well, Your Honor, I think the important factor to consider here is at no point does Mr. Harrington ever say, I'd really like to have an attorney, but I don't want to deal with this. And had that conversation occurred, this could have been dealt with probably in about 60 seconds in trial court, and we would probably save years of litigation. That didn't happen. So I think that's part of it. Isn't it obvious throughout these several hearings that he doesn't really want to represent himself? I would respectfully disagree. I think it's ambiguous at the beginning. He says, I want, I plan to hire an attorney. Which is why you left all the ambiguous nature of this conversation out of your brief. Well, I included the language relied on by the district court. And then there are some other things added as well. But that is the reason that that's in there. There's nothing intentional done to try to make this any more odd than it is already. I will say that when he comes in in December, he says, I'm scared. I don't want to fill out the form. But when he leaves that day, he says, I'm going to hire a counsel. At that point, there's nothing for the trial court to do, because he obviously has a right to hire counsel. That alleviates any kind of Fifth Amendment issues if he hires counsel. So at that point, we have plan A that the defendant says he wants to do. He comes back in early February, says he now wants to maybe represent himself. He can't find counsel. At that point, the trial court says, would you like additional time? He says, yeah, I think I would. So then at the end of this day, he's going to go back out to look for counsel again. We come back at the end of February. And at this point, he has filed motions with the court himself. It's indicated he's spoken to at least one lawyer who doesn't want to take the case because it's document heavy. And then at this point, he says he wants to go forward with his motions. At that point, the trial court goes through the full colloquy and makes it abundantly clear to him that this is a- The very first thing he says at his arraignment is, well, I don't want to hold up the court. I want to get an attorney, but I don't want to hold up the court. And all those perjuries are from getting a public defender, which I assume are the current perjuries. And I'm too scared to fill out that form for the fact that she's going to give me a perjury charge, so a future perjury charge and also talking about the current perjury charges. That's what frames this whole catch-22 that he's in. And then the court gets frustrated every time he says he's going to get an attorney, and he can't. And so that's where, reading the record as I read it, the pressure comes from for him to feel like he just has to not hold the court up and resign to represent himself. Well, I don't think there's evidence the court was getting frustrated. I think there's evidence the court kept reminding him, you have an absolute right to counsel and an absolute right to represent yourself. Well, at the next hearing, he says he hasn't hired an attorney yet, but he's going to when he gets the funds to do so. And then the court says, well, you're out of time, Mr. Harrington. That seems like a little bit of pressure on, you need to do something. But by the time we get to that point, it's been three months since his indictment, and he's continually said he's going to hire someone. I'm just responding to you saying the court wasn't putting pressure on him. Well, I'm saying the court wasn't frustrated. You're out of time. I'm saying the court wasn't frustrated. Now, the fact that there was a time limit, that's a different issue. I don't think that's evidence of the court being frustrated. I think there's two conversations that most directly relate to the voluntary waiver of counsel. And the first of these occurs on page, appendix 252 to 253. And at this point, the judge is going through the colloquy, and the court asks, do you feel qualified to represent yourself in a court of law on these serious felony charges? He says, candidly, no. The judge said, well, then why would you give up your right to an attorney and proceed without an attorney? He then goes into a dialogue about he doesn't have the money, he doesn't really want to do it. And the court says, OK, look, well, those aren't necessarily related, Mr. Harrington. Let's talk about this, because you have an absolute right to be represented by counsel. You also have an absolute right to represent yourself in these proceedings. At this point, the judge is making it clear, if you want a lawyer, and ask for one, I will give you a lawyer. And to the extent that statement is ambiguous, the lawyers But he's already said, and I assume the court means by I will give you a lawyer, a court-appointed attorney. And he's already said at the very first hearing, I'm afraid to fill out those forms. Correct, and then Because of the perjury charges that he's got on him and future charges. And then to clarify that statement, at a later hearing, after Mr. Harrington gets arrested on other charges, and has an attorney for those charges, he then appears back in this court in front of the judge. And the judge says, relating to the fact that he has an attorney in those cases. So there must be some reason for that. So I would have to think that there is at least a chance that you would qualify, or, there's two choices here, or that this court would appoint counsel if you want it on these charges. And I think, now, the petitioner thinks this is ambiguous, but I think the clear reading of that is like, if you want a lawyer, I'm going to give you one, and I'm not going to make you fill out the form. And to the extent that's ambiguous at all, Mr. Harrington Wait, what you think that the court is saying there, if you want a lawyer, I'll give you one without filling out the form? Right, because she says two choices. Where is that again? This is in the appendix at 317, going through 319. Because she's giving him two choices. There's an or in the middle here. She says, so I would have to think that there is at least a chance that you would qualify, meaning we can fill out the form and you qualify for a court-appointed lawyer. Or, so we have a different choice, that this court would appoint counsel if you want it on these charges. So there's two choices she's giving the defendant. We could probably qualify if you want to fill out the form. We can do that. Or if you, I could just give you an attorney. Where does it say, I'll just give you one without filling out the form? I think it's implicit in the fact that. Well, I mean, this is a non-lawyer. Exactly. Shouldn't be implicit. It should be explicit. That's what clear and unequivocal means. OK, well, there's two issues here that I think it may be cleaner than the record might speak to. One is the court's talking about a proceeding in another court where he just got a lawyer. After claiming multiple times he didn't qualify for one in this court. So she was, OK, you said. That was a court-appointed lawyer? I believe it was on the other proceeding. And when they gave you a lawyer, he basically said, I was given one as a means to an end. So I think, not reading too heavily there, he's not happy about having a lawyer appointed, but the lawyer was given to him in this case. So that's happened in another court. No, a means to an end is what could have happened here. There could have been accommodations made where, as in other cases, where the judge takes his financial evidence and puts it under seal, and either he qualifies or he doesn't. Well, let me be perfectly clear. I believe the waiver here is perfectly valid. I will say this is not a textbook way which we want these types of cases handled. 60 seconds by anybody in the courtroom could have alleviated this whole issue. That didn't happen. And I wish it had. I wouldn't have to be here today. You all could have something better to do yourself. But with the record we do have, the number of times he was repeatedly told, you have a right to counsel. You can represent yourself. He consistently said, I want to represent myself. He never said, I'll take a lawyer, but I don't want to fill out the form. And that, I think, is an important distinction. Because that, to me, would then be, OK, now we're going to have a full collective, and we're going to figure out how to do this, so that we make sure this doesn't incringe on your Fifth Amendment rights. But the court never got there, because he never asked for a lawyer. Had he asked for a lawyer, given the context we're dealing with, I think then we're going to have to have a conversation about that. But because he never said, I want a lawyer. I want the court to give me a lawyer, because I need one and I can't afford one. But I don't want the Commonwealth to have access to that file, or I don't want to have to fill it out, because I'm afraid it's going to be used against me. Then we can have a conversation. Any number of things could have worked out at that point. But he didn't say, that's what he wanted. It's like, this court is not. I think we just read the record differently. Maybe. I'm not trying to intentionally be difficult. I mean, I think a fair objective reading is he did consistently say he wanted to represent himself. Why he was saying that might be a different issue, but I also don't think the trial court's supposed to be a mind reader. If he wants something for a specific reason, he needs to let the court know what that is, so we can deal with it. We ask an awful lot of trial courts, but I think reading the mind of a criminal defendant who's repeatedly saying, I want to represent myself, and assuming he's not telling the truth, I don't think it's something we want to ask the trial courts to have to do. And then just to touch briefly on the fact that he was not aware of the impact of the lesser included offenses. I believe they've argued that statutory included offenses should include lesser included. That's not really the way the criminal law works in Virginia. If you look at the statute for the large group of false pretenses, it does not talk about attempt. Attempt is a separate crime, different code section. And if you want to talk about it, you should be advised of everything the code could possibly include. Then we run into issues like, well, the Commonwealth can freely amend indictments up until the time of the verdict. So we'd be dealing with a type of rule that becomes a little weirdly where if you have to advise a defendant of every possible charge you could be facing during any criminal trial, that almost immediately becomes unworkable as a practical reality. And here, generally, the lesser included is a less serious offense, less potential jail time. So generally, a nurse, the benefit of the defendant to be convicted of a lesser offense. And I'll also say that I think the record shows the Commonwealth actually established the full crime largely of the false pretenses. The fact he was convicted of the lesser by the jury either speaks to the fact that the jury did not find some of the evidence credible, or it could be the fact that the jury felt sorry for the defendant representing himself in order to give him a break. We don't know. We'll never know, because we don't go behind the veil of the jury to find out how they reached the verdict. But I don't believe the fact that he had some issue with the lesser included is a grounds to find that the waiver counsel is involuntary. I'm not quite out of time, but I'd be happy to try to address any other questions the court may have. All right. Thank you, Mr. Stoller. Thank you, Your Honor. All right. Now I'll hear from Mr. Morse. I was going to give you a preemptive argument that you could have responded to whatever he was going to say, but I think this is a better posture you're in now. You know what he said. Good afternoon, and may it please the court. My name is Nikolai Morse, and along with my co-counsel Madeline Killen, we're here for Donald Harrington. A few points on rebuttal. First, I'd like to address some questions raised by Your Honors, Judge Agee and Judge Niemeyer. How clear was Mr. Harrington when he was expressing his self-incrimination concerns? We think that he was fairly clear. We think that in December 2011, at his arraignment, he begins the entire engagement. At the start of his trial, he says, I am concerned that I'm going to be getting additional perjury charges, current perjury charges. Judge Agee, you had a good question about, well, is he concerned here about this being for this trial or a future one? Mr. Harrington could have been more clear. We think through the course of the trial does demonstrate that he was concerned that this prosecutor was going to use whatever they could against him in this trial. Now, of course, Brian, I know you say that, and you made that argument. But reading through the actual language here, that doesn't seem to me to be a reasonable conclusion to reach. He's always talking in forward-looking terms. And one other occasion, I think it was in February, he's asked specifically about filling out the form. And he simply says, I'm not going to meet the standard. Yes, Your Honor, but directly after that sentence in February, the judge asks him, OK, so tell me how much money you made. And then in JA 253, I believe this is 255 of the appendix, the court, Mr. Harrington says, I don't really know how much money I make. All the perjuries here are basically for not obtaining an attorney in the court. So these charges are for the prior application, Harrington for attorneys. Yes, they are. And that is why you are declining to fill out an application, absolutely. I share the reading that Judge Agee has come in for a little bit of a different reason. I looked carefully through the whole record to see what his situation was. And I think he made the judgment that he didn't qualify. He knew the questions he had to answer. And at the time all of this was taking place, there was evidence in the record that he had a $1,000 home, that he had rentals there, that he had a separate business, a contracting business. He had W-2 employment income, except in 2007. He reported making $17,000 a month. And there were three bank accounts which had, quote, huge amounts in them. And the question is, if he fairly answered the questions, which he knew he had to do to avoid perjury, he wouldn't qualify. And he might be right. His financial situation is very strange. But on the year he failed to file, he didn't have income. But he might have had a lot of assets around. And I'm sort of wondering whether he just didn't want to spend his money in saying, I'll do this. I'll handle myself and maybe get a lesser sentence or whatever. But I thought that all reinforced the notion that he didn't want to fill out the forms. Your Honor, we would disagree with that. And we would even just point to that. That's what I saw in the record. Well, I would point you to another place in the record at the very point that he was convicted of these crimes. The next thing that happened was the judge asked him if he wanted to be appointed counsel for post-trial motions. He said yes. And she swore him in to file a financial affidavit right there. We think that, in addition to the fact that we think the fact that he's qualified for counsel. That's after all this takes place, right? That's after all this takes place, Your Honor. But the point is, we think that whether or not he was confused about whether he would have actually financially qualified or not, the evidence in the record suggests he would have. And his concern. I suspect that his concern is he didn't qualify. We would disagree, Your Honor. But again, to the extent that it's ambiguous, you know, as the commonwealth. I don't meet the standard. He didn't say, I'm afraid they're going to use this against me in my current perjuries trial. He says, I don't meet the standard. And in another place, he said, I won't qualify. Again, we're not. So your co-counsel said there were three reasons that this waiver of counsel was not valid. One was this Fifth Amendment reason. One was knowing that it wasn't knowing. And the other was that it was not clear and unequivocal waiver. Which do you think is the strongest argument? We think that the self-incrimination argument is the strongest. But again, the fallback to that would be if you think that his expression of self-incrimination was ambiguous, then we're in equivocality. Plainly, Mr. Harrington, we think, much more so than your average defendant who is a zealot and wants to represent themselves. He plainly wanted counsel. He wasn't able to obtain it. And he goes back and forth as to what he would like to do. And at the point in the February exchange with the trial judge, You're saying it wasn't clear and unequivocal because he was in this Fifth Amendment, KEDS 22 situation? Yes, Your Honor. We think, to the extent that you think his expressions of his concerns about perjuries from filling out a financial affidavit were ambiguous to the trial court, then he has, we think, plainly vacillated over the course of these exchanges. I don't think the trial court thought it was ambiguous at all. I mean, it looks like to me it's obvious from the trial court's questions that the trial judge took this as a forward-looking concern of his, not a present concern. I'm not sure where in the record there's any kind of recognition by the trial court that he has a self-incrimination concern here. And I think that's the issue. He explains the self-incrimination concern at the end of February. And the trial judge then says, well, you have two options. Well, the question is whether it is a self-incrimination. In other words, it could be a qualification issue. And in order to get to show that he doesn't have assets, he would have to misstate his assets. But I'm looking at 319. And the court says, so there must be some reason for that. He was appointed another case. So I would have to think that there is at least a chance you would qualify. So qualification was in the court's mind because he got appointed. Or if you wanted on these charges, but you don't want that, she would appoint on these charges. And he said no. And the court says no. And he says no. Thank you. I'm prepared to represent myself. So that dialogue is a little inconsistent with what you're advancing, the interpretation you're advancing. We respectfully disagree, Judge Niemeyer. His last interaction with that judge was in February. So the exchange you're talking about happened in June. Right before then, February, she said, OK, well, you're not willing to file out these financial affidavits because of these perjury concerns. Then your two options are hire a lawyer or represent yourself. The next time he shows up, how is he supposed to understand an offer to appoint counsel as anything other than what he was told last time, which is either fill out a financial affidavit or do these other options. Because there was another circumstance. He committed another crime, and a counsel was appointed for him. And he says something about, now clearly you qualified for court-appointed counsel on the new charge. And he says, I did not. And the court says, well, the judge appointed an attorney. And he says, as a means to an end. Now, I don't know what that was about, but this whole subject is qualification. And it seems to me, when you couple this with what's in the record about his assets and his various He's constantly talking about, I can't qualify unless I commit perjury. I don't want another perjury charge. So he tells the court, that's out of question. But here he says, I did not qualify. This is later. I did not qualify. And well, there's a special arrangement. And then the court says, so there must be some reason for that. So I would have to think that there is at least a chance you would qualify. Or that this court would appoint counsel if you want it on these charges, but you do not want that. He says, no. Again, Judge Niemeyer, we think that it's entirely reasonable for a defendant who's expressed self-incrimination fears, feels that they haven't been heard by the trial judge to understand that offer to be entirely, as you're saying, about qualification. So if your concern is that, well, this whole thing here is Mr. Harrington, and I apologize, I see my time is well over. But I'll respond to your questions if you have them. To the extent that you're concerned here that Mr. Harrington actually just never thought he would qualify, it wouldn't make any sense then that at the end of this trial, the first chance he had when he had been convicted for these perjury charges, he filled out a financial affidavit and he qualified. But maybe the broader issue here is, to whom does the burden fall? Is the burden on Mr. Harrington, a defendant, to communicate to the trial court that I didn't say some sort of magic words, perhaps, that I am concerned about self-incrimination concerns, give me a way to file this, make my financial affidavit sealed? Or is it, as this court has said in Davis and other cases, incumbent upon the court, when they recognize a self-incrimination concern, to give the defendant a way to alleviate that? Now, perhaps the other bigger issue here, again, is that the place that we're at, even if it's not ambiguous, is that the default position, in order to protect both the courts from defendants who might wish to manipulate the system and give themselves a way of appeal, as well as to protect defendants' rights to a Sixth Amendment counsel, is to just appoint counsel. We see this in all kinds of cases. For example, the Dillon Roof case, where you have someone wanting to make a idiosyncratic argument. But that's not constitutional standby counsel. Courts do that as a prophylactic. That's correct, Your Honor. But it is within the broader line of cases that this court has said the default position is just to appoint counsel if there's any kind of uncertainty or equivocality. And I'd like to just briefly make the point that we think the Slayton Rule, while it wasn't held, the Commonwealth hasn't renewed the argument here. And we don't think it's a bar. And we think the ineffective citizens counsel issue only matters if you disagree with us on the Sixth Amendment issue, which we urge this court not to do. Thank you very much for your time. Thank you. All right, I want to just recognize work you guys put in and express our hope we see you again. You did a nice job. And we'll come down and greet counsel and adjourn for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, G. Steven Agee, Stephanie D. Thacker